UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALDEZ GLENN,
        Petitioner,

Case Number: 13-CV-10495

v.

Honorable Patrick J. Duggan

JEFFREY WOODS,
        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, and GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

### **I. INTRODUCTION**

Petitioner Valdez Glenn, a Michigan Department of Corrections prisoner confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2007, he pleaded guilty in Wayne County Circuit Court to second-degree murder, Mich. Comp. Laws § 750.317, carjacking, Mich. Comp. Laws § 750.529a, armed robbery, Mich. Comp. Laws § 750.529, and two counts of felony firearm, Mich. Comp. Laws § 750.227b. He challenges his convictions on the grounds that the plea was involuntary and newly-discovered evidence shows that he is actually innocent. He also argues that his appellate attorney was ineffective for failing to claim on direct appeal that his plea was involuntary. The Court concludes that Petitioner is not entitled to the issuance of the writ of habeas corpus. Accordingly, the Court will deny the petition and decline

to issue a certificate of appealability; however, the Court will grant Petitioner leave to proceed in forma pauperis on appeal.

## II. BACKGROUND

Petitioner's convictions arise from the shooting death of Gregory Hill in June 2006, and an armed robbery and carjacking that occurred a month later, all in the City of Detroit. On November 16, 2006, Petitioner, who was originally charged with, *inter alia*, first-degree murder, pleaded guilty to the lesser offense of second-degree murder, carjacking, armed robbery, and two counts of felony-firearm. The plea agreement provided for the dismissal of several counts of armed robbery and carrying a concealed weapon, and included a sentence agreement as follows: 18 to 40 years for the second-degree murder conviction, 10 to 20 years for the armed robbery conviction, 10 to 20 years for the carjacking conviction, and two years' imprisonment for each of the felony-firearm convictions.

On the date set for sentencing, Petitioner made an oral motion to withdraw his plea, stating that he felt coerced by his defense attorney and his family to plead guilty. The trial court denied the motion and sentenced Petitioner in accordance with the terms of the plea agreement.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, claiming that the trial court erred in denying his motion to withdraw his

plea. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Glenn*, No. 283109 (Mich. Ct. App. Feb. 20, 2008). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Glenn,* 482 Mich. 973 (Mich. Sept. 9, 2008).

Petitioner then filed a motion for relief from judgment in the trial court, raising these claims: (i) his plea was involuntary because defense counsel pressured him into entering the plea and failed to raise an alibi defense; (ii) newly obtained recanting affidavits established his innocence; and (iii) appellate counsel was ineffective. The trial court denied the motion. Both state appellate courts denied Petitioner's applications for leave to appeal the trial court's decision. *People v. Glenn*, No. 300623 (Mich. Ct. App. Aug. 16, 2011); *People v. Glenn*, 491 Mich. 885 (Mich. Mar. 26, 2012).

Petitioner filed his habeas corpus petition in this Court on February 1, 2013. He raises the following grounds for relief: (1) defense counsel's coercive tactics induced Petitioner to plead guilty and counsel's failure to raise an alibi defense denied Petitioner his right to the effective assistance of counsel and the right to present a defense; (2) Petitioner should be allowed to withdraw his plea based upon the affidavits of Daijon Clark and Makarra Sanders recanting previous statements implicating Petitioner; and (3) appellate counsel was ineffective in failing to raise an

ineffective assistance of trial counsel claim on direct appeal.

### III. LEGAL STANDARD

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, –, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

5

inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 2785 n.5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, – U.S. –, 131 S. Ct.

6

1388, 1398 (2011).

## IV. DISCUSSION

### A. Denial of Motion to Withdraw Plea

In his first habeas claim, Petitioner argues that the trial court erred in denying his motion to withdraw guilty plea. He claims that he was coerced into pleading guilty by his family and by his attorney's dire prediction that he would spend the rest of his life in prison if he did not accept the plea. Petitioner further argues that counsel was ineffective in failing to file a notice of alibi.

Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

To be valid, a guilty plea must be voluntarily and intelligently made. *Brady v. United States*, 397 U.S. 742, 747, 90 S. Ct. 1463, 1468 (1970). The plea must be

made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748, 90 S. Ct. at 1469. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749, 90 S. Ct. at 1469. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757, 90 S. Ct. at 1472-73. "[T]he decision whether or not to plead guilty ultimately rests with the client." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002).

Before accepting Petitioner's plea, the trial court advised him of the rights he was giving up by pleading guilty, advised him of the terms of the plea agreement, determined that no promises, other than those encompassed in the plea agreement, had been made to Petitioner, and no one had threatened him to force him to enter the plea. Petitioner represented that he understood the terms of the plea agreement. In denying Petitioner's motion to withdraw his plea, the trial court held that Petitioner's plea was knowingly and voluntarily entered. The record supports this conclusion. Pressure from family members does not constitute coercion rendering a plea involuntary. *See United States v. Gasaway,* 437 F. App'x 428, 434-35 (6th Cir. 2011) ("Having family members convince one to do something is not 'coercion.'"). "Unavoidable

influence or pressure from sources such as codefendants, friends or family does not make a plea involuntary; it is only where the plea is coerced by conduct fairly attributable to the [government] that the due process clause . . . is offended." *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991). Further, Petitioner's claim that his attorney scared him into pleading by warning that he faced life in prison if he did not take the plea is meritless. Petitioner did face a life sentence if convicted of first-degree murder. Therefore, counsel's warning provided Petitioner accurate information upon which to base his decision whether to plead guilty.

Petitioner also does not show that his plea was involuntary because his attorney did not file a notice of alibi. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S. Ct. at 2064. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.

Ct. at 2064. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S. Ct. at 2065. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S. Ct. at 2064.

In guilty plea cases, the "performance" prong requires a showing that defense counsel's representation fell below an objective standard of reasonableness or was outside the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56-59, 106 S. Ct. 366, 369-71 (1985). The "prejudice" prong

"focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59, 106 S. Ct. at 59. The petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*.

Petitioner argues that his attorney was ineffective in failing to investigate alibi witnesses and file a notice of alibi. However, his argument does not go beyond this barebones assertion. At the hearing on his motion to withdraw plea, Petitioner explained why he sought to withdraw his plea, but failed to mention potential alibi witnesses. This failure supports a finding that the alibi issue did not influence Petitioner's decision to enter a plea. In his petition, Petitioner claims that his grandmother and the mother of his children would have testified that he was with them the entire weekend and not involved in the shooting, but fails to provide affidavits from either on that issue. Petitioner's conclusory arguments are insufficient to overcome the presumption that counsel rendered adequate assistance.

### B. Recanting Witnesses

Petitioner next argues that he should be granted habeas relief because the prosecution knew that Daijon Clark's testimony and a custodial statement by co-defendant Makarra Sanders were both false. Daijon Clark testified at the trial of Petitioner's co-defendant, Makarra Sanders. He testified that he was with Sanders and

Petitioner the night before the murder, when Sanders and Petitioner discussed robbing a drug house. Clark also testified that he saw Sanders the day after the murder and Sanders told him that Petitioner shot Gregory Hill. Sanders did not testify in his own defense, but his custodial statement was admitted at his trial. In the statement, Sanders implicated both himself and Petitioner in the shooting.

Petitioner submits affidavits from Clark and Sanders, which he claims show that their previous testimony was perjured. A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269-72, and *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish

knowing use of false testimony."

*Id.* at 894-95 (quoting *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)). "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case. . . . absent misrepresentation or other impermissible conduct by state agents." *Brady*, 397 U.S. at 756, 90 S. Ct. at 1473.

Here, Petitioner fails to establish that the prosecution presented false testimony and, even if the testimony was false, he failed to show that the prosecution knew it was false. Petitioner rests his false-testimony argument on Clark's and Sanders' affidavits. In his affidavit, Clark recanted the testimony given at Sanders' trial implicating Petitioner. Sanders' affidavit contradicts the custodial statement introduced at his trial. Sanders states that Daijon Clark murdered Hill and that he lied when he said Petitioner did so because he wanted to protect Clark.

"Recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000) (quotation omitted). *See also Welsh v. Lafler*, No. 10-1467, 444 F. App'x 844, 850 (6th Cir. 2011) (trial witness's sworn recantation must be viewed with caution); *Bower v. Curtis*, No. 03-1821, 118 F. App'x 901, 908 (6th Cir. Dec. 17, 2004) ("The recanting of trial testimony by prosecution witnesses is typically viewed with the 'utmost suspicion.'")

(internal quotation omitted). Moreover, "[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error." *Bower*, 118 F. App'x at 908.

Petitioner has not shown that Clark's and Sanders' earlier statements inculpating him were actually false. While the affidavits contradict Clark's testimony and Sanders' custodial statement, Petitioner provides no arguable basis for finding the recanting affidavits, executed over three years after the trial under unknown circumstances, more credible than Clark's trial testimony or Sanders' custodial statement. In addition, the State did not present this false testimony because Petitioner did not proceed to trial. Clark's affidavit, even if accepted as true, shows only that he changed his testimony, not that the prosecutor knew the trial testimony was false. The same is true for Sanders' affidavit; it shows only that, rather than inculpating himself and Petitioner as he did in his custodial statement, he now shifts the blame to Clark. Standing alone, these affidavits fail to call into doubt the voluntariness of Petitioner's confession.

In addition, there is no clearly established federal constitutional right to disclosure of *Brady* material prior to the entry of a guilty plea. "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S.

14

622, 633, 122 S. Ct. 2450, 2457 (2002). "When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." *Id.* at 629, 122 S. Ct. at 2455. "Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* (quoting *Brady*, 397 U.S. at 748, 90 S. Ct. at 1469). The Court ruled that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary." *Id.*

Several courts have concluded that there is no clearly established federal constitutional right to the disclosure of *Brady* material prior to the entry of a guilty plea, without regard to whether the material is exculpatory or impeachment evidence. *See Friedman v. Rehal,* 618 F.3d 142, 154, nn.4, 5 (2d Cir. 2010) (suggesting that *Ruiz* applies to exculpatory and impeachment evidence because the Supreme Court "has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial . . . and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea."); *United States v. Moussaoui*, 591 F.3d 263, 285-86 (4th Cir. 2010) (suggesting that there is no right to exculpatory evidence

15

at the guilty plea stage but declining to resolve the issue); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) ("[Petitioner] argues that the limitation of the Court's discussion [in *Ruiz* ] to impeachment evidence implies that exculpatory evidence is different and must be turned over before entry of a plea. *Ruiz* never makes such a distinction nor can this proposition be implied from its discussion."). Given the lack of any Supreme Court precedent requiring *Brady* material to be disclosed prior to the entry of a guilty plea, and the split among courts on this issue, it cannot be said that clearly established federal law requires the prosecution to turn over exculpatory evidence prior to entry of a plea. Therefore, Petitioner has not alleged a violation of clearly established federal law under § 2254(d)(1). Habeas relief is denied on this claim.

### C. Ineffective Assistance of Appellate Counsel Claim

In his final habeas claim, Petitioner argues that appellate counsel was ineffective in failing to raise the claims raised in this petition on direct appeal. As discussed, the Court determined that the interests of judicial economy were best served by addressing the merits of these claims. Nevertheless, the Court will briefly address the petitioner's ineffective assistance of appellate counsel claim.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v.*

*Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims raised in his habeas petition. Petitioner has failed to show that these claims were potentially meritorious. Therefore, Petitioner cannot show that his appellate attorney was ineffective for failing to raise these claims on direct appeal.

## V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability. The Court will, however, permit Petitioner to proceed in forma pauperis on appeal.

## VI. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.** Petitioner is **GRANTED** leave to proceed in forma pauperis on appeal.

Date: December 10, 2014

                                           s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Valdez Glenn
Andrea Christensen-Brown
Laura Moody